UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Donna Loving

   v.                              Civil No. 15-cv-336-LM
                                  Opinion No. 2016 DNH 083
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Donna Loving moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and her application for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting

Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the [Acting] Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and will be summarized here, rather than repeated in full.

Loving's employment history includes work as a bus driver, mail room clerk, machinist, warehouse supervisor, and warehouse order selector.

In 2007, Loving was diagnosed with mild spondylosis[1] in her cervical spine and mild degenerative changes in her lumbar spine.  She received conservative treatment for those conditions, upon her initial complaints about them, and appears not to have complained to health-care providers about either condition more than once.  In 2012, Loving had surgery on both of her heels.  She has also been diagnosed with uterine fibroids.  In 2013, she had hernia-repair surgery.

On November 5, 2013, Loving saw physical therapist Megan Jensen who performed two hours of testing and prepared an 11-page document titled "Physical Therapy Initial Evaluation/Plan of Care."  Administrative Transcript (hereinafter "Tr.") 500.  Among other things, Jensen administered a "6 Minute Walk Test" to "assess [Loving's] general walking ability and endurance level."  Tr. 508.  Under the heading "Endurance Testing," Jensen explained:

> Endurance testing is based on the client's performance on the 6 minute walk test (6MWT) and [is] used to gain information about an individual's ability to work an 8 hour work day.  Generally, if the client's VO2 level is calculated to be greater than 60%, the client will not be able to sustain this level of work activity for 8 hours/day.  The person will however be able to perform at this intense level for brief periods, occasionally throughout the work day.

---

[1] Spondylosis is a "degenerative spinal change[] due to osteoarthritis."  Dorland's Illustrated Medical Dictionary 1754 (32nd ed. 2012).

4

Tr. 509. Based upon Loving's results on the 6 Minute Walk Test, Jensen determined that she had a VO2 level of 66%,[2] a maximum endurance level of 4.5 METS,[3] and an average endurance level of 1.5 METS.

In addition to reporting a variety of test results, Jensen's evaluation form includes a section titled "Summary of Functional Abilities." In that section, Jensen described seven different aspects of Loving's lifting ability and described her capacities to perform ten different postural activities. Jensen also reported that Loving had a capacity to sustain 1.5 METS over the course of an eight-hour work day. Finally, the Summary of Functional Abilities includes a key that translates endurance levels into the strength ratings used by the United States Department of Labor and the Social Security Administration ("SSA"). According to that key: (1) sedentary work, which involves lifting 10 pounds occasionally and negligible amounts frequently, requires an endurance level of 1.5 to 2.1 METS; and (2) light work, which involves lifting 20 pounds occasionally and 10 pounds frequently, requires an endurance level of 2.2 to

---

[2] "VO2 . . . is an estimation of the body's ability to use oxygen for energy." Thoreson v. Astrue, Civ. No. 11-2910 (JNE/SER), 2013 WL 869375, at *11 n.26 (D. Minn. Jan. 29, 2013).

[3] MET is an "[a]bbreviation for metabolic equivalent." Stedman's Medical Dictionary 1192 (28th ed. 2006).

3.5 METS. Based upon Loving's average endurance level of 1.5 METS, Jensen characterized her as being limited to sedentary work, i.e., work that involves lifting 10 pounds occasionally and negligible amounts frequently.

About two weeks after Jensen evaluated Loving, she completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on Loving. In it, she opined that Loving could lift and carry 20 pounds occasionally and 10 pounds frequently, and that she could stand and/or walk for less than two hours in an eight-hour workday. At several points in her Medical Source Statement, Jensen included the following notation: "See full report for details." Tr. 512. The court presumes that the "full report" to which Jensen referred is the evaluation form that she had completed two weeks before she completed her Medical Source Statement.[4]

After the SSA denied Loving's claims for DIB and SSI, she was given a hearing before an Administrative Law Judge ("ALJ"). At that hearing, the ALJ described the following hypothetical worker to a vocational expert ("VE"):

---

[4] While the record includes Jensen's Medical Source Statement, it includes neither a Medical Source Statement from a treating source who is an acceptable medical source, i.e., a licensed physician, see 20 C.F.R. §§ 404.1513(a)(1) & 416.913(a)(1), nor an assessment of Loving's residual functional capacity performed by a state agency consultant, see Tr. 78.

> Would you please assume generally a range of light exertion work which would be occasional lifting of 20 pounds and frequent lifting of 10 pounds; we'll say standing and walking for . . . an hour per day in increments of about 15 minutes at a time; no limitations in sitting; in terms of pushing and pulling, up to . . . 80 pounds [occasionally]; in terms of . . . postural limitations, all occasional, in terms of . . . climbing, balancing, kneeling, crouching, crawling, and stooping; no difficulties with manipulative limitations or visual communication limitations; and no environmental limitations as well.
>
> . . . [T]here'd be no climbing of ladders or ropes or scaffolds.
>
> Okay. Now with the . . . lifting and carrying, would you further please assume, I'm going to make it a little more specific, floor to waist could be 40 pounds; up to shoulder level would be 20 pounds; and over the head level would be up to 15 pounds.

Tr. 65-66. After further limiting the use of foot controls to "occasional," the ALJ asked the VE whether there were jobs in the national economy that could be performed by a person with the residual functional capacity ("RFC")[5] he had described, and who had the same age, education, and past work experience as Loving did. The VE testified that such a person could perform: (1) the light-duty, semi-skilled job of companion; (2) the light-duty, unskilled job of school-bus monitor; and (3) sedentary, semi-skilled job of telephone solicitor.

---

[5] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

7

After Loving's hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) allowing for lifting 20 pounds occasionally and 10 pounds frequently; standing and walking up to one hour in an eight hour workday; occasionally pushing and pulling up to 80 pounds with the upper and lower extremities; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no climbing ladders, ropes, and scaffolds.  The claimant can lift and carry up to 40 pounds to the waist; up to 20 pounds to the shoulders; and up to 15 pounds overhead.  She has no sitting, manipulative, visual, or environmental restrictions.
>
> . . . .
>
> 6. The clamant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not [she] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

8

Tr. 18-19, 22. The ALJ concluded by determining that Loving was not disabled because she was able to perform the jobs of companion, school-bus monitor, and telephone solicitor.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether Loving was under a disability from June 6, 2012, through January 27, 2014, the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional

9

> capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 [] (1983). "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience. If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that

10

> restrict his [or her] ability to perform jobs he [or
> she] would otherwise be capable of performing, then
> the Grid is only a "framework to guide [the]
> decision," 20 C.F.R. § 416.969a(d) (2001). See also
> Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
> (discussing use of Grid when applicant has
> nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

### B. Loving's Claims

Loving claims that the ALJ made multiple errors in determining her RFC and also erred at step five of the sequential evaluation process. The court begins with the ALJ's RFC finding and then turns to step five.

#### 1. The ALJ's RFC Finding

Loving makes several arguments concerning the ALJ's RFC assessment, but the bottom line is this: the ALJ's determination that Loving was capable of light-duty work is not supported by substantial evidence.

In his decision, the ALJ gave substantial weight to Jensen's opinion, stating that he was "persuaded by the claimant's physical therapist, Megan Jensen, P.T., who suggested that the claimant was capable of light exertion work." Tr. 21. In reliance upon Jensen's opinion, the ALJ concluded that Loving "retain[ed] the residual functional capacity to perform the physical requirements of a range of light exertion work." Id.

11

The problem is that Jensen also opined that Loving did <u>not</u> have the endurance level necessary to perform light exertion work.  See Tr. 502.  Moreover, in the Medical Source Statement in which she stated that Loving <u>did</u> have the capacity for light-duty work, she expressly stated that the opinions expressed in that statement were based upon the evaluation in which she said that Loving did <u>not</u> have the capacity for light-duty work.  Those two contradictory opinions from the same medical source are not evidence that a reasonable mind could accept to support the conclusion that Loving had the capacity to perform light work.  See Currier, 612 F.2d at 597.  To be sure, the ALJ is charged with resolving conflicts in the evidence.  See Irlanda Ortiz, 955 F.2d at 769.  But here, the ALJ did not mention the contradiction between Jensen's two opinions, and, necessarily, did not explain why he credited the Medical Source Statement over the evaluation form that the Medical Source Statement identified as the source of its findings.  In sum, the ALJ's finding that Loving was capable of light work is not supported by substantial evidence.  Thus, the court cannot affirm the ALJ's determination that Loving had the RFC to perform the light-duty jobs of companion and school-bus monitor.

2. Step Five

Loving makes several arguments concerning the ALJ's step-five determination. One of those arguments is dispositive: under the circumstances of this case, the ALJ erred by failing to determine whether Loving had any transferable job skills.

In his decision, the ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the [Grid] as a framework supports a finding that the claimant is 'not disabled,' whether or not [she] has transferable job skills." Tr. 22. Loving claims that the ALJ erred by finding that she was capable of performing the jobs of companion and telephone solicitor without first finding she had gained skills from her previous employment that were applicable to those semi-skilled occupations. The court agrees.

According to guidance promulgated by the SSA on the issue of transferability of skills:

> Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled. . . . When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.

13

Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *1 (S.S.A. 1982). A subsequent SSR elaborates on transferability:

> RFC alone never establishes the capacity for skilled or semiskilled work. Ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work.

SSR 83-10, 1983 WL 31251, at *3 (S.S.A. 1983). "Accordingly, the RFC considered under each rule reflects the presence of nonexertional capacities sufficient to perform unskilled work at the pertinent exertional levels." Id. (emphasis added). Finally, "the occupational base considered in each rule [in the Grids] consists of those unskilled occupations identified at the exertional level in question." Id. (emphasis added).

Returning to the ALJ's determination that transferability of job skills was not material, the court agrees that if Loving was capable of performing the full range of work at any particular exertion level, and the Grid applied, the applicable rule would direct a finding of "not disabled" regardless of whether Loving had transferable job skills. That is because Loving would have the RFC to perform several hundred different unskilled jobs. But Loving's ability to perform unskilled work is not substantial evidence that she can perform the semi-skilled occupations of companion or telephone solicitor.

14

In Wilson v. Astrue, Civ. Action No. 08-40228-FDS, 2010 WL 1379889, at *6 (D. Mass. Mar. 30, 2010), Judge Saylor was faced with a situation similar to the one in this case. Like the ALJ in this case, the ALJ in Wilson found that the claimant was not disabled because she could perform one sedentary semi-skilled job, one light-duty unskilled job, and one light-duty semi-skilled job. The claimant objected to the ALJ's determination that she could perform the two semi-skilled jobs, arguing "that because the ALJ made no finding as to whether she had transferable job skills, there [was] insufficient evidence that she [could] perform those jobs." Id. In response, the Commissioner contended that the ALJ did not need to make a finding on transferability because he "relied on the Grid, which support[ed] a finding of 'not disabled' regardless of whether a claimant with Wilson's characteristics possesse[d] transferable skills." Id.

Judge Saylor sided with the claimant. First he noted that the ALJ

> specifically stated that he was prevented from relying solely on the Grid due to limitations contained in Wilson's RFC [and] used the Grid as a guide, but he also needed to consult a vocational expert to determine the extent to which [the claimant's] limitations erode[d] the unskilled light and sedentary occupational base.

Wilson, 2010 WL 1379889, at *7 (internal quotation marks and citation to the record omitted). Under those circumstances, Judge Saylor ruled, the ALJ was obligated to make findings on transferability of skills. See id. at *7-8 (citing Bray v. Comm'r of SSA, 554 F.3d 1219, 1224-26 (9th Cir. 2009); Draegert v. Barnhart, 311 F.3d 468, 475-77 (2d Cir. 2002); Vasquez v. Sec'y of HHS, 683 F.2d 1, 4-5 (1st Cir. 1982); Rivera v. Astrue, No. 6:08-CV-075-C ECF, 2010 WL 711717, at *4-5 (N.D. Tex. Mar. 2, 2010)). Judge Saylor reasoned that such findings by the ALJ were "necessary to provide [it] with a sufficient record to determine whether or not the ALJ's decision [was] supported by substantial evidence." 2010 WL 1379889, at *7.

Other courts, however, have gone the other way. See, e.g., Simcoe v. Colvin, No. 1:14-cv-01488-SEB-MJD, 2015 WL 3960964 (S.D. Ind. June 29, 2015). Simcoe, like Wilson (and this case), involved a claimant with an RFC that "varie[d] to some degree from the exertional levels captured by the grids." 2015 WL 3960964, at *3. Simcoe also involved a claimant, like the claimant in Wilson and the claimant in this case, for whom the grid rules "direct[ed] a result of not disabled regardless of previous work experience and transferability of skills." Id. at *4. In Simcoe, Judge Barker ruled that "the ALJ correctly determined that while Plaintiff's additional RFC factors

16

limit[ed] the range [of] available positions, they [did] not alter the guidelines' conclusion that transferability [was] not an issue for a person with Plaintiff's demographic profile." Id. That ruling stands in contrast with the result in Wilson, in which Judge Saylor ruled that the ALJ could not determine that the claimant was capable of performing certain jobs above the unskilled level without making findings on transferability of skills,

As one would expect, claimant relies on Wilson, while the Acting Commissioner asks the court to reject Wilson and adopt Simcoe. As between Wilson and Simcoe, this court is persuaded by the reasoning of Wilson. The problem with Simcoe is that it does not acknowledge, much less account for, the fact that a finding of "not disabled" based on the Grids means only that there are a significant number of unskilled jobs available to the claimant in question. That there are unskilled jobs available to a claimant with Loving's vocational profile says nothing about whether she is capable of performing the two semi-skilled jobs the ALJ said she could do. Accordingly, this court chooses to follow Wilson rather than Simcoe. Based upon the reasoning articulated in Wilson, the ALJ's determination that Loving could perform the semi-skilled jobs of companion and

17

telephone solicitor is not supported by substantial evidence and, as a consequence, cannot be affirmed.

### 3. Summary

The ALJ based his determination that Loving was not disabled on findings that she could perform one light-duty semi-skilled job (companion), one light-duty unskilled job (school-bus monitor), and one sedentary semi-skilled job (telephone solicitor). However, the ALJ's finding that Loving was capable of light work is not supported by substantial evidence, which eliminates the jobs of companion and school-bus monitor. And absent a finding that she has transferable job skills, the ALJ's finding that Loving was capable of two semi-skilled jobs that she had not previously performed is not supported by substantial evidence, which eliminates the jobs of companion and telephone solicitor. Because the ALJ's decision rests on his determination that Loving could perform the jobs of companion, school-bus monitor, and telephone solicitor, and none of those determinations is supported by substantial evidence, remand is required.

## IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 11, is denied, and Loving's motion to reverse that decision, document no. 10, is

granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                      _____
                                      Landya McCafferty
                                      United States District Judge

April 21, 2016

cc:   Penelope E. Gronbeck, Esq.
      T. David Plourde, Esq.